UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELIZABETH R. TAPIA,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

                Defendant.

No. CASE NO. C09-5192FDB

REPORT AND RECOMMENDATION

Noted for December 11, 20098

     This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C.§636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

<u>INTRODUCTION AND PROCEDURAL HISTORY</u>

     Born in 1973, plaintiff Elizabeth Tapia has lived a difficult life, including her use and abuse of drugs and alcohol since she was eight years old. Plaintiff reports that she was raised by her mother and that she had a very rebellious and unhappy childhood. She reports having been

REPORT AND RECOMMENDATION - 1

sexually abused as a young child, and that she ran away from home at the age of fifteen. She was subsequently placed into government care or foster care for a short period of time. Plaintiff dropped out of school in the ninth grade. Plaintiff stated that her father left the family when she was only eighteen months old, and that she had no contact with him until she was eighteen. Plaintiff reports having attempted suicide at the same age.

Plaintiff was married in 1995 and had two daughters. However, she and her husband divorced in 2001. Plaintiff has since given birth to two other children by another man with whom she has lived, but never married.

Plaintiff has worked in the past as a pharmacy clerk, gaming cashier, bus driver, and retail clerk. Tr. 71-78, 652. Plaintiff has not worked in over fifteen years. Tr. 618. She has had significant pain associated with back and spine impairments. Her first back surgery, a discectomy, occurred in February 1996, when she was only twenty-two years old. After the surgery it was discovered she was pregnant at the time of the surgery (Tr. 168). She gave birth to her first daughter on September 20, 1996. Tr. 264. Plaintiff gave birth to a second daughter on March 18, 1999, and she had a second back surgery in 2000. Tr. 264 & 625.

In May 2000, plaintiff applied for social security benefits. Tr. 612. She was found disabled and awarded supplemental security income ("SSI") benefits. Tr. 79-80. She received SSI funds until October 31, 2003, when plaintiff's benefits were terminated because she failed to be examined as periodically required by the administration. *Id*. Plaintiff explained that she was unable to be examined in a timely manner because the administration insisted on scheduling the exam with a doctor located in Las Vegas, Nevada and she had moved to Forks, Washington. Tr. 615.

Plaintiff reapplied for SSI benefits and filed a new application for disability income benefits ("DIB") on August 31, 2004. Tr. 58-59, 587-92. Plaintiff alleged disability as of February 9, 1996, which was later amended to August 31, 2004, due to a degenerative disc disease and arthritis. Tr. 58, 62, 587-92. Plaintiff's new applications for benefits were denied upon initial and reconsideration determinations (Tr. 596, 604), and a request for an administrative hearing was submitted (Tr. 43).

On June 15, 2007, while the disability matter was pending, plaintiff was involved in a motor vehicle accident, in which she collided head-on with a pickup truck. It was determined that plaintiff had been driving while under the influence of drugs. Tr. 465. She sustained multiple injuries. *Id*. At the time of the accident, her boyfriend had left and taken her two youngest children to California. Plaintiff's older two daughters were in foster care.

An administrative law judge ("ALJ") was assigned to plaintiff's case and a hearing was held on November 27, 2007. Tr. 609-60. The ALJ heard testimony from plaintiff and a vocational expert, Joseph Mosian. Tr. 609-660.

The ALJ issued her decision on March 26, 2008. Tr. 13-23. The ALJ found that Plaintiff suffered from the following severe impairments: a degenerative disk disease; an affective disorder, including anxiety and post-traumatic stress disorder; a learning disorder; substance abuse dependence; and obesity. Tr. 18. The ALJ further found plaintiff to have the residual functioning capacity to perform the full range of sedentary work. Tr. 22. The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act because she retained the ability to perform her past relevant work as a gaming cashier. Tr. 26.

The Appeals Council denied plaintiff's request for review. Tr. 7-8. Accordingly, the ALJ's decision is the final administrative decision. 20 C.F.R.§404.1481, 422.210.

Plaintiff now seeks judicial review of the administration's denial of her application for social security benefits. In her Opening Brief (Doc. 13), plaintiff raises two issues:

1. Whether the ALJ properly considered the medical opinions of Dr. Kreibel, Dr. Dunlap, and Dr. Lysak; and

2. Whether the ALJ properly considered plaintiff's credibility.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C.§405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C.§423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and

cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C.§423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## **DISCUSSION**

### *1. The ALJ Properly Evaluated the Medical Evidence*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION - 5

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ may not, however, substitute his or her own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating doctor's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff alleges the ALJ failed to properly consider the medical evidence. Specifically, plaintiff argues that the ALJ improperly gave significant weight to the opinion of Dr. Hoskins(a non-examining physician), rather than Dr. Kriebel (an examining physician). Plaintiff also argues the ALJ failed to properly consider her mental impairments and the related opinions of Dr. Dunlap and Dr. Lysak. Summaries of the medical records and the ALJ's consideration of each opinion are discussed below.

*a) Plaintiff's Physical Impairments – Dr. Kriebel*

Ms. Tapia was examined by Dr. Kriebel on January 14, 2005. Tr. 227-28. Dr. Kriebel reported a history of two back surgeries, describing her main disability as low back pain and disc disease. Tr. 227. Dr. Kriebel reported that Ms. Tapia was able to bend 20-30 degrees without

REPORT AND RECOMMENDATION - 6

pain and difficulty. *Id*. Dr. Kriebel believed it was unlikely Ms. Tapia could do more than lift and carry 2 to 5 pounds frequently and unlikely she would be able to work, even on a half time basis. Tr. 228.

After reviewing all of the medical evidence (including records from the Bogachiel Clinic in 2005; the Forks Community Hospital; Dr. Field; Dr. Conti; Kathy Madrid; ARNP; Dr. Dunlap; Dr. Romney; Dr. Kriebel; Dr. Hoskins; and Betsy Cadwell) and plaintiff's credibility (discussed below), the ALJ found plaintiff was capable of performing a full range of sedentary work. Tr. 22. The ALJ stated plaintiff was physically capable of the following:

> The claimant can occasionally lift/carry twenty pounds and frequently lift/carry ten pounds. The claimant can stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and can sit (with normal breaks) for about six hours in an eight hour workday. The claimant's ability to push and/or pull is unlimited.

*Id*.

The ALJ explained that the record did not support Dr. Kriebel's assessment that plaintiff was more severely limited. The ALJ pointed to evidence that showed plaintiff's activities were inconsistent with Dr. Kriebel's assessment (Tr. 24) and that the State Agency report, supported by Dr. Hoskins, was the most consistent with the ALJ's review of the evidence.

On June 8, 2005, Dr. Hoskins, after reviewing all the evidence on file, agreed with a Physical Residual Functional Capacity Assessment completed for the State Agency on February 8, 2005. Tr. 141-48. Dr. Hoskins' primary diagnosis was obesity, while the secondary diagnosis was degenerative disc disease. Tr. 141. Dr. Hoskins believed Ms. Tapia was limited to lifting 10 pounds frequently and 20 pounds occasionally, standing and/or walking about 6 hours in an 8 hour day, and sitting about 6 hours in an 8 hour day. Tr. 142. The report states the following:

REPORT AND RECOMMENDATION - 7

> Severity & duration of impairment are disproportionate to the severity documented in the claim. There is lacking MER to document the severity of her impairment as of her DLI, evidence after that date showed her to walk normally and she has had + Waddell's sign in the past, leading us to conclude she is not credible. Additionnal [sic] she has had several children over this time frame so the back pain has not been of the severity to prevent child care. With the appropriate use of medications when needed Client should be work capable.

Tr. 146.

It is important to point out that the ALJ reviewed several medical opinions, noted above, not just Dr. Kriebel's and Dr. Hoskins'. The ALJ properly relied on Dr. Hoskin's opinion, rather than Dr. Kriebel's, because Dr. Hoskins' opinion is most consistent with the ALJ's analysis of Plaintiff's credibility (discussed below) along with his overall review of the medical records, including references to notes from the Bogachiel Clinic and Dr. Romney. For instance the ALJ noted the recommendation that plaintiff participate in water aerobics (Tr. 513) and the fact that she has shown improvement in her ability to walk without the aid of a cane (Tr. 405).

   *b) Plaintiff's Mental Impairments – Dr. Dunlap and Dr. Lysak*

Ms. Tapia was examined by Dr. Dunlap, a psychologist, at the request of the State agency on September 15, 2005. Tr. 391-96. Dr. Dunlap diagnosed mood disorder (depression), anxiety disorder, polysubstance dependence (sustained partial remission), and post traumatic stress disorder. Tr. 395. Dr. Dunlap assessed plaintiff's Global Assessment of Functioning ("GAF") score to be 48, indicating serious impairment. Tr. 396. Dr. Dunlap's opined that Ms. Tapia's ability to assume work responsibilities would depend on management and stabilization of her depression and anxiety symptoms. *Id*. He described her prognosis as guarded, primarily because she reported her medical difficulties were getting worse, as were her depression and anxiety, and she had not found counseling helpful in the past and had suffered adverse reaction to various trials of psychotropic medication. *Id*.

Dr. Lysak, also a psychologist, completed a Psychiatric Review Technique Form for the State agency on October 25, 2005. Tr. 153-66. Like Dr. Dunlap, Dr. Lysak diagnosed a mood disorder (depression), anxiety disorder, polysubstance dependence in partial remission, and post traumatic stress disorder. Tr. 156, 158, 161. Dr. Lysak reported that Ms. Tapia suffered moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 163. Dr. Lysak reported that Ms. Tapia was moderately limited in the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. Tr. 149-50.

Like the physical impairments, the ALJ addressed the medical evidence related to plaintiff's mental impairments in the context of the record as a whole. The ALJ did not summarize or note Dr. Lysak's opinion in her decision, however, the court finds no error in that because the ALJ's assessment of plaintiff's mental impairments is consistent with Dr. Lysak's report.

As noted above, the ALJ found that plaintiff had severe mental impairments caused by affective disorder, including anxiety and post-traumatic stress disorder, a learning disorder, and substance abuse dependence. Tr. 18, 20. The ALJ specifically discussed the severity of plaintiff's mental limitations, finding that (1) plaintiff has moderate restrictions in her activities of daily living (Tr. 21), (2) plaintiff has only mild difficulties in social functioning (*Id*.), (3)

REPORT AND RECOMMENDATION - 9

plaintiff has moderate difficulties with regard to concentration, persistence or pace (*Id*.), and (4) plaintiff has not experienced any episodes of decompensation (Tr. 22). These findings are reflected and supported by Dr. Lysak's report. In summary, the ALJ concluded that plaintiff's mental impairments did not prevent plaintiff from engaging in sedentary work.

In sum, the ALJ properly weighed the conflicting medical evidence for both her physical and mental impairments and properly relied on the evidence in the record as a whole, including plaintiff's credibility (discussed below) and the medical opinions of Dr. Hoskins, to conclude that Plaintiff retained the ability to perform a full range of sedentary work.

The court notes that the medical records may have been interpreted in the manner plead by Plaintiff. However, it is worth repeating that the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ or the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, as it may be in this matter, the ALJ's conclusion must be upheld. Id.

## *2. The ALJ Properly Assessed Plaintiff's Credibility*

Plaintiff argues the ALJ failed to properly consider her allegations and testimony regarding the severity of her impairments. Plaintiff argues that the ALJ's misinterpretation of her credibility resulted in the erroneous conclusion that she is capable of returning to work as a gaming cashier.

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §404.1529, 416.929; Smolen v. Chater, 80 F.3d

REPORT AND RECOMMENDATION - 10

1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R.§404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1284; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." Greger, 464 F.3d at 972 (*internal quotation omitted*). General findings are insufficient. Smolen, 80 F.3d at 1284; Reddick, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between her testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Smolen, 80 F.3d at 1284.

At step four of the sequential evaluation process, the ALJ found that Ms. Tapia's testimony was not entirely credible. Tr. 23. The ALJ wrote:

> The claimant alleges that the residual effects from her spinal impairment has resulted in pain and decreased mobility. According to the claimant, her back impairment limits her ability to stand, lift, jump, sit for prolonged periods, walk, run and it interferes with her sleeping. Exhibit 8E/2. The claimant alleges that

REPORT AND RECOMMENDATION - 11

> this pain and subsequent limitations associated with her back impairment, along with her anxiety and post-traumatic stress disorder prevents her from working.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Tr. 23.

The ALJ continued to explain the reasons for discrediting plaintiff's allegations of disability. The ALJ asserted that Ms. Tapia was contributing to her health problems by failing to follow medical advice, particularly concerning her prescription for pain medication. Tr. 24. The ALJ also asserted that Ms. Tapia continued to maintain an obese weight even though her medical providers had advised her to exercise. *Id*. The ALJ asserted that plaintiff also failed to follow through with pain management or counseling against the advice of medical providers. *Id*.

The ALJ further noted that plaintiff's level of back pain and discomfort was not supported by objective medical evidence or plaintiff's activities. Id. The ALJ referenced a trip to California and other long distance car rides. Tr. 24-25. The ALJ also noted medical providers' observations of plaintiff's ability to walk without signs of significant pain. Tr. 24, 26. The ALJ found Ms. Tapia able to perform most of her activities of daily living, including taking care of her children. *Id*.

Reviewing the ALJ's analysis of plaintiff's credibility, the court finds the ALJ improperly considered plaintiff's continued obesity as a reason to discredit her allegations. *See* Orn v. Astrue, 495 F.3d 625 (9$_{th}$ Cir. 2007)(the failure to follow prescribed treatment for obesity should rarely be used to deny a disability claimant's benefits). However, this error does not negate the ALJ's proper reliance on the other reasons to discredit plaintiff's allegations of disability. Bray v. Commissioner, 554 F.3d 1219, 1227 (9th Cir. 2009). So long as the ALJ's

REPORT AND RECOMMENDATION - 12

decision is properly supported by independent reasons, the consideration of a single, improper reason does necessity vacating the ruling. Id; Carmickle v. Commissioner, 533 F.3d 1155, 1162-63 and n.4 (9th Cir. 2008); Batson v. Commissioner, 359 F.3d 1190, 1197 (9th Cir. 2004).

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 18, 2009**, as noted in the caption.

DATED this 23rd day of November, 2009.

J. Richard Creatura
United States Magistrate Judge